FILED
WILLIAMSPORT
JUN 13 2018
PER _____
DEPUTY CLERK

In the United States District Court
for the Middle District of Pennsylvania

Justin Credico (a/k/a Judicial/Cyber Watchdog)

v.                           3: CV 18-1204

FCI Allenwood Medium HHSA Parkin,
Unknown FCI Allenwood Medium John/Jane Doe PA/MLP's;
(all defendants in their individual capacities)

Civil Action No: TBA

Bivens Complaint

RECEIVED
WILLIAMSPORT
JUN 13 2018

Justin Credico
FCI Allenwood Medium
Box 2000
White Deer PA 17887

## Introduction

This is a Bivens complaint against the captioned defendants, seeking redress via punitive and compensatory damages, over pain and suffering caused by their actions. Actions which include; ultra vires action causing deliberate indifference and intentional infliction of emotional distress (IIED), and state torts of malpractice

## Parties

### A. Plaintiff

At all times throughout this complaint, the plaintiff, Justin Credico, was an inmate at FCI Allenwood Medium

### B. Defendants

1. At all times throughout this complaint, HHSA Parkin was an employee of Health and Human Services, contracted to work at Allenwood in order to supervise health care officials

2. At all times throughout this complaint, the unknown FCI Allenwood John/Jane Does, PA/MLP's, are physician assistants and/or mid-level practicioners ~~employed~~ employed to perform health care functions for the inmates

3. All of these defendants are considered federal officials

## Statement of Facts

1. On September 11th 2018, plaintiff arrived at Allenwood

2. That same day, plaintiff was seen by an unknown PA/MLP for health intake screening, wherein he was asked a series of health questions, and whether or not he had any chronic issues

3. Plaintiff explained that he has back and leg pains, to which the unknown PA/MLP told him he would have a sick call followup

4. Several weeks later, plaintiff was seen by his unknown PA/MLP about his pain issues. Plaintiff explained that he has back and leg pains, that he is indigent, unable to buy meds off commissary, and would like help for his pains

5. Plaintiff's PA/MLP then prescribed him Ibuprofen, to which he had to renew every 2 weeks

6. Around November of 2018, plaintiff explained that he would like to receive Naproxen, since his Ibuprofen was no longer helping. He was approved, and received 2 week supplies at a time

7. Around December of 2018, plaintiff requested that his care-level be changed so that he could refill his Naproxen via the Trulincs system, instead of needing to place a sick-call for a refill. He was told he couldn't have his care-level changed at the time, and to renew the request later on

8. On February 1st 2018, plaintiff was placed into the SHU

9. Sometime mid-February, 2018, plaintiff's care-level was changed so that he could now refill his Naproxen without needing to be seen at triage everytime he needed to refill

10. On or about March 19th 2018, plaintiff placed a dental sick call slip to obtain ADA approved toothpaste, since the SHU toothpaste that is given to inmates is always expired by 2yrs

11. That same week, an unknown PA/MLP started arguing with plaintiff about not placing sick calls or not to file a grievance over the toothpaste issue, saying that its not the health care officials' problem, its Commissary's problem. To which plaintiff explained that he is indigent

12. Again that same week, plaintiff placed his permitted Naproxen refill. But was given instead, some Triamcinolone Acetonide cream. Plaintiff tried to explain to the unknown PA/MLP, that his prescription refill request was for Naproxen, not this cream, and that they gave him the wrong meds. The PA/MLP walked away

13. On or about March 26th 2018, plaintiff's Naproxen refill request was still not given. Upon his complaints about his leg and back pains, he was told to get Aleve from commissary.

14. Plaintiff tried to explain that he is indigent and debt encumbered to BOP of well over $100, so that any $ made is fully taken out and his balance is left at $0. Which means he couldn't buy meds or hygiene from commissary

15. On March 3rd 2018 HHSA and other unknown PA and MLP were trying to get an inmate (Houston) to take a TB test. They told this inmate that they'll use an extraction team (use of tear gas, shields, bean bag shotguns, and force) upon him if he refuses - which they ended up doing

16. HHSA Parkin then walked up to plaintiff's SHU cell, and held up the TB test, smiling, and asked the plaintiff if he was going to take it

(4)

17. Plaintiff stated that he isn't due for a TB test, and that he has a fundamental human interest right to refuse any unwanted medication.

18. Plaintiff then asked Parkin why he couldn't get his Naproxen refilled, and was told he isn't indigent. Plaintiff explained that he is debt encumbered, can't buy any meds or hygiene. Parkins laughed and walked off.

19. On April 3rd, plaintiff wrote the SHU Lieutenant about the interaction with Parkin.

20. At one point, March 15th 2018, PA Pfirman and Counselor Delmonico were able to let plaintiff file a BP8. To which he was deemed indigent (see Exhibit A.1)

21. Once Parkin found out, plaintiff has since not been able to receive OTC indigent supplies.

22. Plaintiff has over 5 times tried to get OTC indigent supplies. Even for a sinus issue that has worsened over 3 weeks, at times causing plaintiff's sinus to bleed, yet he still can not get indigent OTC meds and hygiene.

23. Recently, June 4th 2018, after explaining that he needs his Naproxen refilled, and some OTC for his sinuses, an unknown PA/MLP told him to try and refile the OTC request, and his Naproxen request.

24. Upon doing so, plaintiff was again given a cream, when he specifically asked for Naproxen, and told them it was the 2nd time they messed up the meds.

25. On June 5th 2018, despite sending Parkin a notice of these continuing issues, unknown PA/MLP again attempted to give plaintiff cream, when he specifically requested Naproxen.

26. Exhibit A.2 shows at pt. B he has refills remaining. And

(5)

A.2 pt B shows where the prescription label states "indigent," yet Parkin is refusing to allow the Med Tech to declare plaintiff as indigent at pt. A

~~27. To this day, plaintiff's Naproxen has~~hasn't~~ been refilled, his pains not taken care of, and nor his sinuses taken care of with OTC requests~~

## Claims

### I. Claim 1 - Deliberate Indifference - Defendant Parkin

1. HHSA Parkin has acted ultra vires to the BOP policy and CFR 28 CFR § 540.105, wherein an inmate with a balance of $6 or less in 30 days is considered an "inmate without funds"

2. Moreover, BOP policy states that an inmate is "indigent" if he has an order from a magistrate or federal judge declaring him as such. Plaintiff's 2241 case of 18-cv-465 MDPA has declared him as indigent

3. Parkin was told by plaintiff that he was indigent and that he needed his Naproxen and OTC meds

4. Parkin refused and ignored plaintiff's request and told plaintiff that he was being denied his meds and OTC because he isn't indigent

5. This has transpired for over 2 months

6. Via his ultra vires acts/omissions, Parkin has caused needless pain upon plaintiff who is in fact indigent

7. Despite plaintiff notifying Parkin via informal complaint, the problem has yet to be resolved

8. All statements made in the Statement of Facts are repeated herein

---

## II. IIED - Claim 2 - Defendant Parkin

1. Parkins had a duty to correct plaintiff's medical and OTC indigency issues according to the aforementioned CFR's and program statements, defining plaintiff as indigent

2. Parkins had a duty to abide by those indigency rules, statutes, and policies

3. Parkins intentional refused to abide by these rules, inter alia, when acting ultra vires

4. His refusal and ultra vires actions caused plaintiff to not get his refills and not get his OTC requests handled

5. Which further caused plaintiff to suffer from unnecessary back and leg pains and have the serious sinus issues discussed infra.

6. All statements made in the Statement of Facts are repeated herein

---

## III. Claim 3 - Supplemental State Tort Malpractice Defendant John/Jane Doe PA/MLP's

1. Despite being routinely informed, over 3 times, that the defendants were trying to give plaintiff the wrong meds, the



defendants did not correct their mistakes

2. Plaintiff properly, unequivocally, and routinely asked for his Naproxen. His "refill sheet" was filled out and only asked for Naproxen. And he had 1 refill permitted and remaining (see Exhibit A. 2 part B)

3. Defendants engaged in malpractice when trying to persistently give plaintiff the wrong medication, even when told of their error 3 times or more, which caused unnecessary pain via missed Naproxen

4. The Court will have supplemental jurisdiction over this malpractice claim, if the Court retains jurisdiction over Parkins

5. All statements made in the Statement of Facts are repeated herein

---

### Certificate of Merit
### Res Ipsa Locquitor

---

1. Under PA law, a person alleging medical malpractice, must file a "COM" (Certificate of Merit)

2. Which requires a statement by a medical expert, that the actions complained of, deviated from normal standards of care

3. However, a person may file a res ipsa locquiter, stating that a layman who reviews the facts, would know what the proper standard

⑧

of care is, and that defendants deviated from it

4. Accordingly, plaintiff seeks the res ipsa exception, stating that a common layman would know, that the defendant PA/MLP's deviated from the standards of care. To wit, everyone knows that when he requests a refill of a particularized medication, that was due, he should not be given the wrong meds. Further bolstered by the fact that plaintiff told these defendants of their error over 3 times

## Exhaustion

1. Exhaustion is an affirmative defense to be raised by defendants. However, plaintiff brings a preemptive argument

2. Exhaustion is not required, per common law precedent, when plaintiff demonstrates futility

3. Futility is shown here, since defendants have acted ultra vires to statutory laws and regulation and policies. To wit, refusal to allow plaintiff to receive indigent meds and OTC's

4. Futility is also shown where, as here, administrative procedure is inadequate to prevent harm. To wit, defendant's (Parkin) ultra vires conduct ran contrariwise to his own assertion that plaintiff was not indigent by that very statutory law's definition

5. See common law precedents of Lyons v. Marshals, 840 F.2d 200

(9)

(3rd Cir. 1988); and Carling v. Peters, 2000 WL 1022959 (EDPA)

## Relief

A. Plaintiff seeks:

1. Punitive damages

2. Compensatory damages

6-10-18
Dated


Justin Credico

## Certificate of Service

Case Name: FCI Allenwood Medium HHSA Parkin et al

Case No: TBA          Re: Bivens Complaint

I hereby verify that on this 10th day of June 2018, one true copy of the enclosed, Biven Complaint, was sent via first class mail to:

Clerk of Courts
U.S. District Court
Middle District of PA
240 W. Third St
Suite 218
Williamsport PA 17701
(10 p.) Complaint
(3 p.) Exhibit)
(1 p.) Cert.)

6-10-18
Dated

Justin Credico
Justin Credico

(14)



INMATE NAME/NUMBER: Justin Credico #71239066
FEDERAL CORRECTIONAL COMPLEX-ALLENWOOD Medium
P.O. BOX 2000
WHITE DEER, PA 17887

JUN 10 2018
JUN 10 2018

special
mail

Clerk of Courts
U.S. Courthouse
Middle District of PA
240 W. Third Street
Suite 218
Williamsport PA 17701